Downey, Judge,
delivered the opinion of the court.
The claimant in this case is administratrix of the estate of Meritt Eslick, deceased, who, on the 8th day of December, 1906, and for a time prior thereto and until his death in February, 1914, was a citizen of the United States residing at Muskogee, Okla., and was a practicing attorney. On the date named and for a time theretofore and thereafter M. L. Mott was the attorney for the Creek Nation, one of the Five Civilized Tribes of Indians.
By section 18 of the act of April 26, 1906, 34 Stat., 144, it was provided:
*269 “That the Secretary of the Interior is hereby authorized to bring suit in the name of the United States for the use of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes, respectively, either before or after the dissolution of the tribal governments, for the collection of any moneys or recovery of any land claimed by any of said tribes whether such claim shall arise prior to or after the dissolution of the tribal governments, and the United States courts in Indian Territory are hereby given jurisdiction to try and determine all such suits, and the Secretary of the Interior is authorized to pay from the funds of the tribe interested any costs and necessary expenses incurred in maintaining and prosecuting such suits.”
On the 7th day of December, 1906, in connection with the anticipated bringing and prosecution of suits for the recovery of lots or the value thereof which had been fraudulently scheduled in the different towns in the Creek Nation, said Mott recommended to the Commissioner of Indian Affairs the employment of Mr. Eslick. On the 8th day of December, 1906, the employment of Mr. Eslick was authorized by the Secretary of the Interior, and by wire, on that date, by authority of the Secretary, he was notified by Mr. Mott of his employment and directed to proceed with the preparation of bills in equity in all cases possible. Then, or soon thereafter, his compensation was fixed at $3,000 per annum, with expenses when necessarily employed away from Muskogee, and the Indian agent at Union Agency, Muskogee, was directed to pay Mr. Eslick’s salary monthly from the tribal funds of the Creek Nation in his possession.
Eslick performed various services under his employment, in connection with which he was authorized by the Secretary of the Interior to verify all pleadings filed in such suits, and he was paid his salary up to and including the month of June, 1909. Thereafter there was some delay in payment, apparently, in the first instance, because of some question as to whether or not there should not be renewed authority to pay during the new fiscal year beginning July 1, 1909. On September 23,1909, the Commissioner of Indian Affairs, reciting that, inasmuch as Mr. Mott, the national attorney for the Creek Nation, was retained at a salary of $5,000 and another attorney (W. L. Sturdevant) was retained at an *270 annual salary of $5,000 and additional compensation on a percentage basis, it was believed that the employment of three attorneys imposed an unnecessary burden on the Creek Nation, but, inasmuch also, as Mr. Mott.had represented that Mr. Eslick for a time would prove of invaluable aid in effecting compromises in town-site suits pending, on account of his familiarity with the facts in the cases, recommended that the superintendent of the Union Agency at Muskogee be authorized to expend from the Creek tribal funds the further sum of $1,500, or so much thereof as might be necessary, for the continued employment of Mr. Eslick for a period not exceeding six months from July 1,1909, and this recommendation was approved by the Secretary of the Interior. On the 20th da}1- of October, 1909, Mr. Mott recommended that the services of Mr. Eslick should be discontinued after October 31, 1909, and, although it does not appear that official action was taken by the Secretary with reference to this recommendation, or that Mr. Eslick was notified of the termination of his employment, it fairly appears that his services did terminate with the month of October, 1909.
Although no official order to that effect appears of record, it seems that all vouchers for the payment of salary to Mr. Eslick had first received the approval of Mr. Mott. After June 30, 1909, vouchers had not been approved for the reason as stated that payment of salary had not been authorized for the new fiscal year. After authority had been given, as recited above, for continued payment of salary during the period stated, Mr. Mott then refused to approve vouchers for the alleged reason that Mr. Eslick was absent from Muskogee during this pei'iod from July 1 to October 31, and that he rendered no service and that he was in no condition to render service because of being addicted to the morphine habit.
The facts appear to be that Mr. Eslick was not absent during this entire period, but that he was absent from the first to the twenty-fifth day of July, and from the twentieth to the thirty-first day of October, and that if he was addicted to the morphine habit Mr. Mott had known that fact since April or May of 1907. It appears from the record, however, *271 that there had been financial transactions as between Eslick and Mott, and that Eslick had commenced an action against Mott for the recovery of sums alleged to be due, in connection with which there is at least room for inference that Mott’s refusal to approve Eslick’s vouchers was as much due to animosity, resulting from this litigation, as from any conscientious belief upon the part of Mott that he ought not to approve the vouchers because of Eslick’s incapacity by reason of his alleged unfortunate habit, known to him for so long a period theretofore. It at least seems strange that such conscientious scruples should develop at this stage of the proceeding when knowledge upon Mott’s part of the existence of the habit had not interfered with his approval of vouchers covering a period of more than two years, and when it also appears that when, on a former occasion, question was raised as to Eslick’s status during an absence of about a month, apparently for the same reason, Mott strenuously contended, in a letter to the Secretary of the Interior, that such an absence did not affect his right to receive his compensation. The salary for the four months beginning with July and ending with October, 1909, has never been paid, and this action is for the recovery thereof in the sum of $1,000.
From the facts stated, most of which are uncontroverted and the others of which fairly appear from the record, it seems to us very clear that Mr. Eslick should have been paid his salary for this period of four months. He was employed as an attorney upon the basis of an annual compensation, and he was not an employee of the Government in such a sense as that he might be absent from his post of duty without loss of pay, only upon the specific granting of leave. The department had had that question before it at an earlier date during his employment and had held that it was not a case for the consideration of the granting either of sick leave or annual leave with pay. The employment was continuous and it is plainly apparent that if the employee was incapacitated or incompetent, or for any other reason was not discharging the duties of his employment, the remedy was to terminate the employment, a remedy which the Secretary of *272 the Interior might have applied at any time. The employment was by the Secretary of the Interior. He was authorized to pay any necessary expenses in connection with this litigation from the Creek tribal funds. It does not appear that Mr. Mott was authorized to determine whether Mr. Eslick should be paid or whether he should not be paid and there seems to be no reason why the Secretary of the Interior might not and should not have directed the payment of the amount which we believe to be legitimately due to Mr. Es-lick’s estate, out of Creek tribal funds.
But that is not the question for our determination in this case. The action is against the United States and a judgment is sought against the United States upon the contract of employment as between Mr. Eslick and the Secretary of the Interior. Claimant’s counsel, in his brief, says “the claimant here is sui juris, and is asserting the primary liability of the United States on a cause of action arising ex contractu,” and “ the claimant is suing upon the contract of the Government which the Secretary of the Interior was authorized to enter into by that provision in the law to which we have referred,” and “ nobody is liable to Eslick but the Government, and it has its own recourse against the Indians’ fund.”
While it is entirely true that if a judgment in this case should be rendered against the United States the United States might be reimbursed out of the tribal funds and the transaction in the Department of the Interior would become nothing more than a mere matter of bookkeeping, that condition does not in any sense determine the question as to the authority, in the first instance, for the rendering of a judgment against the United States.
The legislation which gave to the Secretary of the Interior his powers in these matters authorized the bringing of suits in the name of the United States for the use of the tribes named, conferred jurisdiction on the United States courts in the Indian Territory, and authorized the payment of any necessary expenses out of the funds of the tribe interested. It did not authorize, or assume to authorize, or inferentially authorize, the Secretary of the Interior to enter into any *273 contracts of employment with attorneys on behalf of and to be paid by the United States, and it is our opinion that the Secretary of the Interior had no power to make any such contract.
We have said that the jurisdiction in these cases was conferred upon the United States courts in the Indian Territory. It would seem, in the first instance, that the duty to prosecute these suits was by statute placed upon the United States district attorneys, for section 1771, Revised Statutes, makes it the duty of district attorneys, among other things, to prosecute “all civil actions in which the United States are concerned.”
In this connection it is material to observe that the employment of attorneys on behalf of the United States is a power which has been vested in the Attorney General and which may not be otherwise exercised except when specifically authorized. Section 363, Revised Statutes, provides as follows:
“The Attorney General shall, whenever in his opinion the public interest requires it, employ and retain, in the name of the United States, such attorneys and counselors at law as he may think necessary to assist the district attorneys in the discharge of their duties, and shall stipulate with such assistant attorneys and counsel the amount of compensation, and shall have supervision of their conduct and proceedings.”
And in that connection there is also for consideration section 365 of the Revised Statutes, which provides as follows:
“No compensation shall hereafter be allowed to any person, besides the respective district attorneys and assistant district attorneys, for services as an attorney or counselor to the United States, or to any branch or department of the Government thereof, except in cases specially authorized by law, and then only on the certificate of the Attorney General that such services were actually rendered, and that the same could not be performed by the Attorney General, or Solicitor General, or the officers of the Department of Justice, or by the district attorneys.”
Other statutory provisions not necessary to cite tend along the same general line.
*274 We will not be understood as questioning tbe right of the Secretary of the Interior to have employed Mr. Eslick in the case in question, nor his right to pay him his compensation from the funds of the tribe interested, but that legislation did not authorize a contract of employment which could bind the United States for the payment of compensation, and it follows that the action must be dismissed. It is so ordered.
Campbell, Chief Justice, and Booth, Judge, concur.